## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DON L. McGLONE,** | : | **Civil No. 1:10-CV-1409** |
| | : | |
| **Plaintiff** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **LAST MILE INC., T/D/B/A** | : | |
| **STING COMMUNICATIONS,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

### I.      Factual Background

This action was initiated on July 8, 2010, by the filing of a complaint. (Doc. 1.) On August 8, 2011, the defendant moved for summary judgment on the plaintiff's claims. (Doc. 25.) That motion was fully briefed by September 27, 2011. (Docs. 26, 27, 30, 33.) Before the Court could act on the motion, however, the defendant notified the Court that it had filed a petition for bankruptcy relief, and the case was thereafter stayed pursuant 11 U.S.C. § 362.

On February 6, 2014, the undersigned entered an order directing the parties to provide a status update on or before May 30, 2014, to summarize the status of this lawsuit, and the defendant's bankruptcy proceedings, so that the Court could determine the appropriate course of action to ensure the prompt and fair resolution

of this matter once the defendant's bankruptcy proceedings had concluded. (Doc. 51.)

In an email sent to counsel on August 27, 2014, the Court advised the parties that it had not received a status update as ordered in February, and requested that the parties provide one promptly. The Court also inquired of defendant's counsel whether, in light of the significant time that has elapsed since the pending motion for summary judgment was filed, it may be prudent to withdraw the motion without prejudice to its being refiled at such time as the bankruptcy proceedings have finally concluded, to the extent it still made sense to do so.

Following an indication that not all counsel had received notice of the Court's inquiry, we issued an order directing the defendant's counsel to provide the Court with updated contact information, and confirm that he continues to serve as counsel of record in this case. The order further directed counsel to advise the Court whether in light of the passage of time and events that may have occurred since the defendant filed its motion for summary judgment in August 2011, it may be prudent to withdraw the motion without prejudice to refiling it following the conclusion of the defendant's bankruptcy proceedings.

On September 2, 2014, the defendant filed a status report that recited a number of important events that have taken place since this litigation was stayed, as well as

a number of important facts that have a material bearing on this action. (Doc. 55.) Of chief importance is the fact that on March 31, 2014, the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") confirmed a plan of liquidation and related disclosure statement, and that plan became effective on June 5, 2014. Of further importance is the apparently uncontested fact that the plaintiff has never filed a proof of claim with the Bankruptcy Court, has never filed for leave to file a late claim even after having been provided notice that he had missed the claims bar date set by the Bankruptcy Court, and has never moved the Bankruptcy Court to lift the automatic stay to permit him to pursue his claims against the defendant in this Court. On the basis of these representations, the defendant renewed its request that the Court dismiss this action.

We construed the defendant's September 2, 2014, status report to be in the nature of a renewed motion to dismiss, since the plaintiff's claims asserted in this action appear to be pre-petition unsecured claims that would be provided for, if at all, in the defendant's plan of liquidation that was confirmed in 2014. The defendant represented that the plaintiff has never filed a proof of claim in those bankruptcy proceedings, and had not taken any other steps in an effort to preserve the claims that are asserted in this case. The defendant's representations raised substantial questions about the viability of the plaintiff's claims asserted in this action, and strongly

suggested that to the extent the plaintiff believes he has a right to relief, the appropriate venue in which to pursue such relief is in the United States Bankruptcy Court for the Southern District of New York.[1]

Accordingly, we entered an order deeming the defendant's motion for summary judgment that was filed on August 8, 2008, to be moot and construing the defendant's September 2, 2014, status report to be in the nature of a motion to dismiss. (Doc. 60.) We directed the plaintiff to file a response to the defendant's status report, and to explain why this action should not be dismissed so that the plaintiff could, if he believed it appropriate, seek relief from the Bankruptcy Court that is administering the defendant's bankruptcy proceedings. (Id.) The Court further directed the plaintiff to explain his efforts to identify a successor entity to Last Mile Inc. d/b/a Sting Communications.

---

[1] The plaintiff previously argued that he received inadequate notice of the claims bar date in the defendant's bankruptcy proceedings and, for that reason, did not file a timely claim against the estate. (Doc. 48.) The plaintiff made this representation in October 2013. Regardless of the truth of this assertion, it now appears that since that time the plaintiff has taken no steps to file a proof of claim against the estate, or to seek leave to file a late proof of claim, or to take any other action in order to preserve his asserted claims against the estate. The plaintiff has suggested that this Court simply find that the defendant is estopped from asserting the claims bar date in this litigation, but in so doing the plaintiff is essentially inviting this Court to make factual findings and legal rulings that have a direct bearing upon the administration of the defendant's bankruptcy proceedings – something that we submit is more properly done in the Bankruptcy Court actually overseeing those proceedings.

Since that order, it appears that nothing has changed in this litigation. Instead, on November 17, 2014, the plaintiff filed a status report in which he named Affiniti, LLC as a potential successor entity. Although it appears that the plaintiff is correct that Affiniti purchased Sting's assets pursuant to sections 105, 263, and 365 of the Bankruptcy Code, free and clear of all liens, claims an encumbrances (Doc. 62, Ex. A.), as the defendant explained in detail in its response to the plaintiff's status report. (Doc. 62.) As the defendant cogently explains, the Bankruptcy Court administering Sting's plan of liquidation and bankruptcy proceedings has made clear that the sale of Sting's assets was free and clear of liability, specifically including successor liability, and that Affiniti was released of any claims relating to Sting as part of this sale. (Id. and Ex. B.) Accordingly, the defendant explained that the plaintiff has no recourse against Affiniti, and certainly no recourse of any kind in this Court against Affiniti. Accordingly, in November 2014, the defendant again urged the Court to dismiss the litigation, and to direct the plaintiff to pursue whatever recourse he believes he may have in the United States Bankruptcy Court for the Southern District of New York, as all other creditors of Sting have done since the bankruptcy case was commenced.

Nevertheless, the litigation has remained pending. On June 15, 2015, the District Court entered an order directing that the parties file a status report by July 8,

2015. (Doc. 63.) The plaintiff filed a status report that did nothing more than to repeat his earlier representation that Affiniti was the successor-in-interest that he had identified as a potential substitute in this litigation. The plaintiff did not respond in any way to the defendant's contention that Affiniti purchased Sting's assets free-and-clear of liens and claims, and that any recourse against Affiniti would have to be pursued in the Bankruptcy Court, which had jurisdiction over the asset sale. The defendant's status report (Doc. 65.) highlights the absence of new information from the plaintiff, and refers the Court to the information has previously been provided regarding Sting's bankruptcy proceedings, the plaintiff's failure to file a claim in those proceedings, the subsequent asset sale, and the confirmation of a plan of liquidation. The defendant thus again urges the Court to dismiss this action, since the only venue in which the plaintiff may properly pursue any relief – to the extent any is available – is in the Bankruptcy Court. The plaintiff has not responded to the defendant's representations or factual assertions, and has not responded to the defendant's request that this matter be closed.

## II. Discussion

Upon consideration, it is respectfully recommended that the Court enter an order dismissing this litigation. The record is uncontradicted that Sting's assets were transferred to an affiliate of Affiniti as part of Sting's bankruptcy case, which was

6

administered by the United States Bankruptcy Court for the Southern District of New York. It is also undisputed that on May 15, 2013, the Bankruptcy Court entered an "Order Granting Debtor's Motion Pursuant to 11 U.S.C. §§ 105(a), 363 and 365 and Federal Rules of Bankruptcy Procedure 6004 and 6006 for Entry of an Order Authorizing the Debtor to (a) Sell Substantially All of its Assets Free and Clear of Liens, Claims and Encumbrances and (b) Assume and Assign Certain Unexpired Leases and Executory Contracts to the Purchaser. " (Doc. 62, Ex. A, "Sale Order".) Pursuant to the Sale Order, Affiniti PA, LLC, as the designee of Global Leveraged Capital Advisors, LLC, was authorized to acquire Sting's assets. Paragraph 9 of the Sale Order makes it clear that Affiniti acquired the assets free and clear, and in so doing "is not and shall not be liable as a successor under any theory of successor liability for such Interests." (Id., Ex. A, Sale Order, ¶ 9.)

It is also undisputed that on March 31, 2014, the Bankruptcy Court confirmed Sting's plan of liquidation, which specifically provided for the treatment of Sting's creditors and the disposition of the remaining limited assets of Sting following the closing of Sting's asset sale. (Doc. 62, Ex. B, "Confirmation Order".) The Confirmation Order provides, in pertinent part, as follows:

> Except as provided in the Plan, upon the Effective Date, all holders of Claims and Interests shall be precluded and enjoined from asserting against the Debtor, the Estate, GLC or the Estate Representative their

successors or assignees, or any of their assets or properties, any other or further Claim or Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of interest and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

(Id., Ex. B, Confirmation Order, ¶ 14.)

Moreover, the Bankruptcy Court's Confirmation Order expressly retains jurisdiction in that court over "all matters arising out of, arising in or related to, the Chapter 11 Case to the fullest extent permitted by applicable law". (Id., ¶ 11.1.)

Taken together, Sting's uncontradicted representations, and the orders of the Bankruptcy Court, compel a finding that this action should be dismissed. The plaintiff has persisted in suggesting that he has some avenue of relief against Sting or against Affiniti, but these suggestions have no legal basis, and are entirely undermined by the events that took place in the defendant's bankruptcy proceedings. Any relief to which the plaintiff may be entitled, and any assertions he may wish to make regarding the notice he did or did not receive concerning the defendant's bankruptcy or claims-bar dates, should be presented to the Bankruptcy Court that administered those proceedings, and which has retained jurisdiction over matters involving the defendant and the sale of its assets to Affiniti.

## III. Recommendation

Accordingly, it is recommended that the Court enter an order dismissing this action and closing the case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of October 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge